UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

GEORGE ALBERT COLE

                Plaintiff,

    v.

PAUL DELAPLAIN and
LT. J. MALKMUS,

              Defendants.

Case No. 1:08-CV-00476-EJL

**MEMORANDUM ORDER**

      Pending before the Court in the above-entitled matter are Plaintiff George Albert Cole's ("Cole") Motion to Produce Relevant Document (Docket No. 39) and Defendant Lt. J. Malkmus' ("Lt. Malkmus") Motion for Summary Judgment (Docket No. 43). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

**ORDER - 1**

## PROCEDURAL BACKGROUND

Plaintiff was incarcerated at the Gem County Jail between April 3, 2008 and August 20, 2009. It was unclear from the Complaint whether Cole was a pretrial detainee or a convicted prisoner at the time he was held at Gem County Jail. In the Initial Review Order, Docket No. 6, the Court directed Plaintiff to clarify his status in his amended complaint and Plaintiff indicated he was "convicted" when he was held at the Gem County Jail. Docket No. 31.

Plaintiff alleges his constitutional rights were violated when he was denied adequate medical care because Defendants Lt. Malkmus and Paul Delaplain did not provide follow-up medical care as instructed by medical personnel at Walter Knox Memorial Hospital. Plaintiff also alleges that Defendant Malkmus denied Plaintiff access to qualified medical personnel. Plaintiff desired to be seen for follow up care by a particular doctor instead of jail medical personnel. Plaintiff alleges that Defendant Delaplain has not dealt with the Plaintiff's medical problems appropriately and instead has "prescribe[d] different pain medications until he finds on [sic] that will work . . . ." Complaint, Docket No. 3 at 17.

Plaintiff brought his claims under the First, Sixth, Eighth, and Fourteenth Amendments and seeks compensatory and punitive damages. In the Initial Review Order, the Court determined that Plaintiff had not stated a claim under the First or Sixth Amendments and dismissed those claims. The Court allowed Cole to amend his

complaint[1] and proceed on his claim of inadequate medical care which would be in violation of the Eighth Amendment since Plaintiff has now clarified that he was convicted (instead of a pre-trial detainee) at the time of the alleged violation. Accordingly, the Court now dismisses any Fourteenth Amendment claim the Plaintiff had previously presented since the Fourteenth Amendment would only apply to a claim of inadequate medical care for a pre-trial detainee.

Plaintiff named Lt. Malkmus, a Gem County Sheriff's Department Lieutenant who was in charge of the jail, as a Defendant. Cole also named as a Defendant Paul Delaplain ("Delaplain"), a physician assistant who contracted to provide medical care to inmates at the Gem County Jail between April 3, 2008 until February 28, 2009. The Court served the Plaintiff's Complaint on an attorney who represented Mr. Delaplain in a previous Federal court prisoner civil rights claim. Such attorney indicated to the Court he was not representing Mr. Delaplain in this matter and could not accept service on his behalf. Therefore, the Court ordered Cole to provide the Court with a viable physical address so that Mr. Delaplain could be served with the Complaint by the United States Marshal. Cole was unable to provide any address other than the address to the former counsel who had previously been served, so the Court dismissed without prejudice

---

[1] Plaintiff filed a First Amended Complaint, Docket No. 9, on February 25, 2009, within thirty days of the Court's Initial Review Order. On March 6, 2009, Plaintiff filed a Second Amended Complaint. Although Plaintiff was not given leave of the Court to file a Second Amended Complaint, the Second Amended Complaint did not set forth any new causes of action, merely additional facts, so in the interest of justice the Court will consider both amended complaints in ruling on the pending dispositive motions.

Plaintiff's claims against Mr. Delaplain. Docket No. 28.

The third Defendant named in the original Complaint was Gem County. The Court has previously ruled Plaintiff could not proceed on any claims against Gem County as Cole had failed to allege facts sufficient to state a policy or custom claim against Gem County. Docket No. 11. Therefore, the only claim that remains is a claim for a violation of Plaintiff's Eighth Amendment rights related to his claim that Defendant Lt. Malkmus was deliberately indifferent to Cole's serious medical needs. All other claims and Defendants have been dismissed.

## FACTUAL BACKGROUND

The Gem County Jail ("Jail") contracts with certain medical providers to provide medical care to the inmates. From the date Cole arrived at the Jail on April 3, 2008 until February 28, 2009, the Jail contracted with Delaplain, PA, to provide medical services to inmates. From March 6, 2009 until August 20, 2009 when Cole left the custody of the Jail, the Jail contracted with Badger Medical, PA to provided medical services.

Medical providers are available to provide treatment at least once a week at the Jail and prescriptions are provided daily by Jail personnel. If an inmate has a severe medical issue when medical personnel are not available, they are transported to the local hospital for treatment or to a local doctor.

On April 6, 2008, Cole was given a baseline assessment that included a review of medical history, prescriptions and a physical examination by Delaplain. The physical examination was normal. Cole was not taking medications at that time and he refused to

provide a medical records release form to Delaplain.  Delaplain assessed Cole with

borderline personality disorder, antisocial personality disorder, alcoholism, and narcotic

abuse based on the history provided by Cole.

On April 20, 2008, Delaplain saw Cole at the Jail and Cole was requesting a

prescription for Oxycodone, a narcotic pain medication[2].  Delaplain told Cole there were

no physical findings to support a prescription for Oxycodone.  Defendants acknowledge

that Cole did take Oxycontin some time prior to his incarceration at the Gem County Jail,

but it is undisputed by Cole that he was not taking Oxycontin at the time he entered the

Jail.

On June 19, 2008, Cole was transported to Dr. Shannon Schantz's ("Dr. Schantz")

office for medical treatment for his backpain.  Dr. Schantz had previously treated Plaintiff

prior to his incarceration.  Cole testified at his deposition that he did not request a

prescription for Oxycontin as his back was not hurting severe enough to where Cole

thought he needed Oxycontin.

On July 23, 2008, Delaplain saw Cole at the Jail when Cole was complaining of

severe back pain and requested a prescription for Oxycodone.  Delaplain prescribed the

maximum allowable dose of Vicodin for pain for five days and an anxiety medication for

seven days.  Delaplain believed Cole was demonstrating drug-seeking behavior and did

---

[2]The term "oxycodone" is used in the medical records as well as the term "oxycontin."  It is
the Court's understanding that "oxycontin" is time-released oxycodone without anything added.
"Oxycodone" is a opioid painkiller and can be found in a number of prescription medications
when combined with other chemicals or in the form of oxycontin when it is not in combination
with other chemicals.

not want to put him on narcotics if another pain medication would provide relief.

On August 26, 2008, Cole was transported to see Dr. Vetter who was covering for Dr. Schantz. Cole requested Oxycontin for his pain and indicated that Dr. Schantz had prescribed Oxycontin in the past for him. Dr. Vetter indicated Oxycontin was not appropriate for initial care of back pain and told Cole he would not prescribe Oxycontin. Dr. Vetter's medical records indicate Cole became "very upset" after he said he would prescribe Mobic and Ultran. Cole refused these prescriptions and Dr. Vetter indicated Cole should follow up as needed.

On August 31, 2008, Cole was transported to Walter Knox Memorial Hospital ("Hospital") complaining of chest pain. Cole was seen by Cherish Estep ("Estep"), PA, who diagnosed gatroesophageal reflux disease ("GERD"). Estep concluded Cole's was refusing his current dosage for a generic form of Prilosec as well as other medications. Cole said he was reluctant to agree to any medical treatment other than Oxycodone. Estep advised to re-start his generic form of Prilosec and to follow up with his primary care provider within a week on the discharge papers. Estep explained in her affidavit that when she advised "follow up" with primary care physician that could be satisfied by follow up with Jail medical personnel and it did not have to be Cole's former doctor, Dr. Schantz:

> When I instruct a patient, as I did Cole on August 31, 2008, to follow up
> with a primary care provider, I am not directing that the patient see a
> particular medical professional. Instead, I am instructing the patient to
> follow up with a medical professional. It would have been consistent with
> my instructions to Cole for him to follow up with medical staff at the Gem

ORDER - 6

County Jail.

Affidavit of Cherish L. Estep, PA-C, MPAS, In Support of Defendant's Motion for Summary Judgment, Docket No. 43-13.

It is unclear from the record if Cole completed a medical request form for a follow up with Dr. Schantz or jail personnel.

On October 5, 2008, Delaplain, the Jail PA, attempted to see Cole at the Jail because Cole had refused his medications since August 23, 2008 and had refused to eat for seven days. Cole refused to be seen by Delaplain.

On November 10, 2008, Cole was transported to see Dr. Schantz. Dr. Schantz prescribed Ultram for Cole's back pain. On November 19, 2008, Cole requested to be seen again by Dr. Schantz. On November 23, 2008, Delaplain recommended that Cole be seen again by Dr. Schantz. On December 8, 2008, Cole was transported to see Dr. Schantz. Dr. Schantz prescribed Oxycontin for Cole's back pain. Cole received Oxycontin until March 2009.

On February 17, 2009, Cole was transported to the Hospital and was seen by Dr. Vetter. Cole complained of chest pain, however, Dr. Vetter diagnosed Cole with probable GERD masquerading as angina. Docket No. 10, p. 5. Dr. Vetter's medical records indicate at that time Cole was taking Oxycontin for back pain, omeprazole for GERD, aspirin which he refuses to take, enalapril which he refuses to take, simvastin and isosorbide mononitrate and colace. *Id.* Dr. Vetter did not change the medications but recommended Cole restart or stop refusing certain of his prescriptions. *Id.* Dr. Vetter

directed Cole to follow up with Dr. Schantz or the PA at the Jail. *Id.*

On March 6, 2009, Badger Medical took over the medical contract at the Jail. Dr. Jeffrey Keller (Dr. Keller) and Eric Wells ("Wells"), PA, provided medical services at the Jail for Badger Medical. Dr. Keller and Wells reviewed the prescriptions for inmates in the Jail.

On March 7, 2009, Cole was transported to the Hospital and was seen by Estep, PA. Estep diagnosed Cole with bronchitis and vertigo. Estep prescribed Doxycycline, an Albuterol inhaler and meclizine. Docket No. 45-1, p.3. The written discharge instructions indicated Cole should follow up with Dr. Schantz in 4-5 days. *Id.* Estep explained in her affidavit that she said follow up with Dr. Schantz as Cole had indicated that was his doctor, but Estep intended that Cole have follow up with some medical provider within one week and Jail medical personnel would satisfy this discharge instruction. Estep did not believe Cole had to be seen by a specific medical provider.

On March 18, 2009, Cole was transported to the Hospital and seen by Rodriguez. Rodriguez signed the line for Physician on the discharge instructions, but it is unclear to the Court whether Rodriguez is a doctor or a PA. Docket No.45-1, p.1. Plaintiff indicates in his Reply to Second Affidavit of James J. Davis and Cherish Estep, P.A., Docket No. 47, that he was seen in the emergency room by Dr. Eddie Rodriguez Lopez. It is also unclear from the discharge instructions what Dr. Rodriguez diagnosed Cole's medical issue to be. *Id.* The written discharge instructions indicate Cole should follow up with his primary care provider, Dr. Schantz, in 2 to 3 weeks and should have a

prescription filled. *Id.* It is unclear from the discharge instructions if Cole informed Rodriquez that his primary care provider was Dr. Schantz and that is why Rodriquez recommended follow up with Dr. Schantz.

On March 20, 2009, Cole was again transported to the Hospital and seen by Estep. Estep diagnosed Cole's condition to be GERD. Estep ordered patient to increase his Prevacid dosage. Docket No. 43-16. Cole informed Estep he did not want to be seen by Jail medical personnel and that he wanted to be seen by Dr. Schantz. *Id.* Estep told Cole she would not specify Dr. Schantz for follow up and would only specify follow up with medical personnel. *Id.* Estep indicated she did not have a preference of who conducted the follow up and Cole accused Estep of taking the side of the Jail. Cole indicated in the future he would refuse to be seen by Estep. *Id.*

On April 24, 2009, Wells, PA, saw Cole at the Jail. Wells discussed the medication Cole was taking for GERD: Prevacid. Wells indicated the same results could be achieved with an increased dosage of the generic form of Prilosec and that either treatment (Prevacid at current dosage or Priolose at a higher dosage than Cole had previously taken) would be equally effective. Additionally, Dr. Keller, consulted with Dr. Schantz, and discussed his view that Cole was addicted to Oxycontin. Dr. Schantz agreed with Dr. Keller that Cole could be placed on a different prescription for his pain. Dr. Keller prescribed a non-narcotic painkiller for Cole's pain.[3]

---

[3]Cole objects in his response to the motion for summary judgment that Dr. Keller contacted Dr. Schantz regarding a change in his pain medication, but Cole has no

Dr. Keller, Wells and Delaplain stated in their affidavits that Lt. Malkmus did not, in any way, interfere with the medical treatment provided to Plaintiff. Delaplain and Lt. Malkmus stated in their affidavits that Jail medical personnel were available for follow up treatment if an inmate needed follow up.

Lt. Malkmus sets forth the Jail policy for seeking medical treatment in his affidavit. Docket No. 43-2. The Jail policy provides that an inmate can request routine medical care by completing a written request (kyte) to see the Jail's medical personnel and in the case of emergencies, emergency medical technicians ("EMTs") respond and/or transport the inmate to the local hospital. *Id.* Cole does not dispute his knowledge of this policy. The policy also specifies that the medical service providers, not the Jail employees, determine what care will be provided. *Id.*

Cole does not allege that any medical personnel has determined he suffered any negative long-term consequences as a result of the medical treatment he received while incarcerated at the Jail. Cole does not dispute that he was asked by Jail personnel on numerous occasions if he wanted to see a medical provider even when a kyte was not completed and that he was transported to the hospital and to private medical providers. Cole does not dispute that he was at times non-compliant in taking his medicines and that at times he refused treatment by certain Jail medical personnel. Cole does not dispute that follow up medical treatment was available from Jail medical personnel after his hospital

---

constitutional claim regarding Dr. Keller's consultation with Dr. Schantz before modifying an inmate's prescription.

**ORDER - 10**

visits, rather, Cole argues he was not allowed to be seen by Dr. Schantz as provided in the discharge instructions from the hospital.

## MOTION TO PRODUCE RELEVANT DOCUMENT

Plaintiff seeks to compel production of his deposition transcript at no cost. Defendant Lt. Malkmus objects to providing a copy of Cole's deposition without payment. The Court is not allowed to waive a witness fee pursuant to 28 U.S.C. § 1915. *Tedder v. Odel*, 890 F.2d 210 (9th Cir. 1989). By analogy, it is unclear if public funds can be used to pay for transcripts in civil proceedings involving litigants applying for *in forma pauperis* status. The Court could not locate Ninth Circuit authority on the issue of whether a party proceeding *in forma pauperis* is responsible for payment of civil transcription costs, but the Court did find *Wright v. United States*, 948 F. Supp. 61, 62 (M.D. Florida 1996), which held 28 U.S.C. § 1915 does not give trial courts authority to direct the government to pay for transcription costs. This is especially true when the litigant has not demonstrated the need for having the deposition transcript. *See Tabron v. Grace*, 6 F.3d 147, 159 (3rd Cir. 1993).

Indigent litigants are not guaranteed the same treatment afforded wealthy litigants with regards to a "right" to a deposition transcript at public expense. The Court finds it does not have the authority to order the payment of the cost of the transcript at public expense under 28 U.S.C. § 1915. Moreover, in this case no showing that a copy of the deposition is necessary since Plaintiff was the party deposed and had the opportunity to

take notes during his deposition.  Accordingly, the motion to compel production of the deposition transcript by Defendant Lt. Malkmus is denied.

## MOTION FOR SUMMARY JUDGMENT

### 1. Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See, Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986).  If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 323.[4]

---

[4] *See also*, Rule 56(e) which provides, in part:

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975) (*quoting First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48. Material facts are those that may affect the outcome of the case. *See id.* at 248.

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence

---

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## 2. Section 1983 Standard

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).[5] Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

---

[5] The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Plaintiff asserts that Defendant Lt. Malkmus has violated his Eighth Amendment right to have adequate medical care in jail. To prevail on an Eighth Amendment claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (quotation omitted).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted).

Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). If the defendants are able to show that medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," summary judgment in favor of the defendants is proper. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

### 3. Can Lt. Malkmus be Liable for Medical Treatment?

The first question for the Court to answer is whether the only remaining defendant can be liable for the alleged inadequate medical care since Lt. Malkmus is not a medical provider, but the officer in charge of the operation of the Jail. In *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), the court outlined the requirements for a finding of proximate causation:

> Liability under section 1983 arises only upon a showing of personal participation by the defendant. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979). A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983.

**ORDER - 16**

Therefore, in order for Lt. Malkmus to be held liable in his amended complaint, Plaintiff has to establish Lt. Malkmus personally participated in the alleged constitutional violations. Plaintiff claims Lt. Malkmus interfered with his medical care by failing to carry out medical orders provided by outside medical providers regarding follow up appointments and the filling of prescriptions. Lt. Malkmus states in his affidavit that he "did not in any way instruct or direct the medical services providers on the treatment that would be provided to any inmate, including Cole." Docket No. 43-2, p.2. Delaplain, Wells and Dr. Keller also confirmed in their affidavits that Lt. Malkmus did not in any way interfere with the medical needs and treatment of Cole. The Medical Services Agreement between Gem County and Delaplain sets forth that Gem County and the Jail have no right to control or direct the medical services provided:

> RIGHT OF CONTROL: COUNTY agrees that it will have no right to control or direct the details, manner, or means by which PA accomplishes the results of the health care services performed hereunder.

The Agreement with Badger Medical, P.A. also provided in section 7 that the County shall have no control over the performance of this agreement by Contractor, except to specify the time and place of performance." Docket No. 43-5. Moreover, the Jail's policies in the Inmate Handbook specify that the medical service providers, not the Jail officers, determine what medical care will be provided. Docket No. 43-3.

It is unclear from the record if Jail medical personnel receive copies of medical records and discharge instructions when an inmate is taken for medical services outside the Jail. Defense counsel states in the reply brief that Estep's first affidavit did not

address the discharge instructions attached to Cole's responsive briefing as Cole had not produced it with initial disclosures. This seems to imply the Jail and possibly the Jail medical personnel do not receive copies of medical records and/or discharge instructions after outside medical services have been provided to an inmate. Cole states in his briefing that the discharge instructions were not given to him, but to the security escort that was with Cole when he was discharged and cites to Estep's Second Affidavit. Docket No. 47, p. 1. The Court reviewed Estep's Second Affidavit and finds it states discharge instructions were given directly to the patient. Docket No. 46-1, p2. Regardless, it is undisputed that Cole received at least oral discharge instructions when he was seen at the Hospital and that he would have had the requisite knowledge of Jail policies to request follow up by Jail medical personnel or other medical providers if he so desired.

There is no evidence in the record that the Jail personnel transporting inmates receive copies of discharge instructions that are given to a patient receiving medical care at the local hospital. Absent knowledge of the need for follow up, it is unclear to the Court how Lt. Malkmus could be responsible for failing to transport an inmate for followup.

Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted). On the one hand, "prison officials are entitled to rely on the opinions, judgment, and expertise of prison medical personnel in determining the

course of treatment that is medically necessary and appropriate for an inmate." *Wynn v. Mundo*, 367 F.Supp. 2d 832, 337-38 (D. N.C. 2005). On the other hand, if an inmate continues to complain after he has had a cursory initial medical examination, officers who ignore the continuing complaints may be deliberately indifferent. *Cooper v. Dyke*, 814 F.2d 941, 945-46 (4th Cir. 1987).

In *Jones v. Evans*, 544 F.Supp. 769 (D.Ga. 1982), the Court reasoned in a similar circumstance:

> A guard's interference with prescribed care does not establish a per se case of unnecessary and wanton infliction of pain violative of the Eighth Amendment. A plaintiff prisoner must still show that the interference was unjustified, and that serious medical needs were affected.
> \* \* \*
> Assuming, for purposes of the summary judgment motion that the alleged interference occurred, a court's primary attention must be on the second element of the *Estelle* test, the seriousness of the plaintiff's medical needs. In such cases, whether interference with prescribed medical care rises to the level of cruel and unusual punishment depends upon the degree of pain or harm suffered by the prisoner as a result of the interference with prescribed care, the adequacy of alternative care if and when it begins, and whether the interference with care is an isolated event or one incident in a pattern.
> \* \* \*
> In order to counter the plaintiff's allegations in a case such as this, the defendants must demonstrate in their affidavits that even assuming misconduct for which they were responsible led to interference with prescribed care, the misconduct was not gross. In other words, the defendants must show that the interference with prescribed care was not only a temporary aberration in a pattern of attentive care, but also that it was de minimis.

*Id*. at 775.

While the Court does not believe Plaintiff has established that the alleged interference by Lt. Malkmus was more than *de minimis* at best and did not lead to any

serious injury to Plaintiff, for the purpose of resolving this summary judgment motion, the Court will assume the truth of what Cole alleges to create a genuine issue of material fact regarding the question of whether Lt. Malkmus had some participation in the delivery or alleged non-delivery of Cole's medical care and interferred in the fulfillment of discharge instructions and prescriptions. Therefore, the Court will next evaluate whether the medical care provided violated the Eighth Amendment.

## 4. Did Plaintiff's Medical Care Violate the Eighth Amendment?

### A. *Denied Aspirin and Nitroglycerin claim*

Defendant argues that Plaintiff has dropped the claim that he was not provided aspirin and nitroglycerin for his heart condition. The Plaintiff did not respond to this argument or rebut the medical records that establish Cole was given both aspirin and nitroglycerin by medical providers. The Court finds the medical records establish that failure to take the prescribed and provided aspirin and/or nitroglycerin were due to Plaintiff's own decision not to take the medications and not due to medical or Jail personnel's failure to provide said medications. Defendant is entitled to summary judgment on this claim.

### B. *Denied prescribed follow up care claim*

Plaintiff maintains that Lt. Malkmus denied him access to the prescribed follow up care with Dr. Schantz. The Court agrees with Defendant Lt. Malkmus that the claim for

follow up care with Dr. Schantz, even if looked at in a light most favorable to Cole, does not survive summary judgment as a valid Eighth Amendment violation. Cole is confused about whether or not the Jail medical personnel could do the follow up set forth in the discharge instructions. The record is undisputed that follow up care was available at the Jail and that the hospital personnel only put follow up should be with Dr. Schantz because Cole told them Dr. Schantz was his primary care doctor (even though he had not seen Dr. Schantz regularly for some time before being incarcerated). Additionally, some of the discharge instructions expressly included language that Cole could be seen by *either* Dr. Schantz or Jail medical personnel for follow up. In fact, the affidavits of Estep who treated Cole at the emergency room at the Hospital establish that being seen by Jail medical personnel for follow up would be consistent with her follow up instructions.

Moreover, there is no constitutional right to an outside medical provider of one's own choice. *Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution."). There is no showing by Cole that failure to get the prescribed follow up care with Schantz resulted in deliberate indifference to a serious medical condition. This is because the record is undisputed that when Cole declined treatment by PA Delaplain, Delaplain recommended that Cole be taken to be seen by Dr. Schantz and this was done. Cole saw Dr. Schantz or her covering doctor on numerous occasions at Jail expense. There is no genuine issue of material fact regarding the claim for interference with follow ups with

Dr. Schantz as Cole has not established deliberate indifference to a serious medical need on the part of Defendant Lt. Malkmus, so the claim must be dismissed as a matter of law.

### C. Denied pain medication claim

Defendant claims he was denied pain medication and that Lt. Malkmus kept him from receiving his prescription for Oxycontin or Oxycodone.  The undisputed medical records do not support a claim that the Lt. Malkmus was deliberately indifferent to the medical needs of Cole regarding pain medication.  First, Delaplain had a legitimate and undisputed concern regarding Cole's history of drug and alcohol abuse that supported prescribing non-narcotic pain medications and his physical exam of Cole did not support the dispensing of pain medication when Cole arrived at the Jail in 2008.  Second, Cole has not challenged medical personnel opinions of Delaplain and Dr. Vetter that non-narcotic pain medication addresses most patient's back pain and that oxycontin is not proper for initial treatment of back pain.  As discussed earlier, even if the medical personnel who prescribed pain medication other than Oxycontin or Oxycodone rose to the level of medical malpractice (which this Court does not find), such does not create a constitutional violation.  To the extent Plaintiff is alleging the medical providers exhibited mere indifference, medical malpractice, or negligence to his early request for narcotic pain medication, such will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980).

Third, it is uncontested that Cole was given pain medication by Jail medical personnel. Fourth, and most importantly, Cole was seen by Dr. Schantz who prescribed Oxycontin after the other pain medications were determined to be insufficient and Cole does not dispute that he received Oxycontin from December 8, 2008 until March 2009.

Fifth, the Court acknowledges that Dr. Keller did take Cole off Oxycontin and put him on another non-narcotic pain medicine in March 2009. However, the change in pain medication was only done after a consultation with Dr. Schantz about the possible change for Cole and Cole has made no showing that the change in pain medication by Dr. Keller caused serious medical harm to him. Cole left the custody of the Jail on August 2009 and there is no medical evidence the pain medication prescribed by Dr. Keller was ineffective. Sixth, Cole has failed to establish a genuine issue of material fact regarding how Lt. Malkmus participated actively in the medical decisions regarding Cole's pain medication besides conclusory allegations that Lt. Malkmus kept him from receiving pain medication.

The Court finds the Defendant has established that medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," so summary judgment in favor of the Defendant is proper on this claim. *Toguchi v. Chung*, 391 F.3d 1051, 1061 (9th Cir. 2004).

### D. Improperly Changed Prescription for GERD

Plaintiff's final claim is that it was improper for PA Wells to change his prescription from Prevacid to an increased dosage of the generic for Prilosec when an outside medical provider had given the prescription for Prevacid.  Defendant argues the medical testimony shows that either treatment is equally effective for GERD, so Cole's claim must be dismissed as the change in drugs did not result in deliberate indifference to Cole's medical needs.  The Court agrees with Defendant Lt. Malkmus.

The Eighth Amendment does not provide a right to a specific treatment. *See Forbes v.  Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her.").  A prison doctor's recommendation for a less costly treatment is not deliberate indifference unless the recommendation "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir.1998).  Absent any medical rebuttal testimony that an increase in the dosage of the generic form of Prilosec created a substantial risk to Cole, the claim must be dismissed.

### 5. Conclusion

In sum, the Court has considered all of the evidence in the record and provided Cole, the non-moving party, with every benefit of the doubt and every factual inference to

which he is entitled on summary judgment.  Nevertheless, the medical record before the Court reflects that the Jail provided Cole with constitutionally adequate medical care. Personnel did not ignore Plaintiff's alleged health care claims, but addressed his medical care issues with appropriate speed and attention.

This determination does not discount Plaintiff's contention that he continued to feel the symptoms of his physical ailments.  However, the Jail's response to these needs was constitutionally sufficient no matter whom was ultimately responsible for the provision of health care services to Plaintiff during his incarceration.   The record demonstrates Jail and medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that Lt. Malkmus or medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," so no Eighth Amendment violation has occurred and the case must be dismissed.

## ORDER

Being fully advised in the premises, the Court hereby orders:

1) Plaintiff's Motion to Produce Relevant Document (Docket No. 39) is DENIED.

2) Defendant Lt. Malkmus's Motion for Summary Judgment (Docket No. 43) is

GRANTED and the case is DISMISSED IN ITS ENTIRETY.


DATED:  **November 24, 2010**

~~Honora~~ble Edward J. Lodge
U. S. District Judge